IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2011 JUN 15 AM 9: 50
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

LAMEBOOK, LLC,
         Plaintiff,

-vs-                                            Case No. A-10-CA-833-SS

FACEBOOK, INC.,
         Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Facebook, Inc.'s Motion to Dismiss [#19], Plaintiff Lamebook, LLC's Response [#21], and Facebook's Reply [#22]. The Court held a hearing on March 25, 2011 and both parties appeared through counsel. Having considered the pleadings, arguments at the hearing, applicable law, and the case file as a whole, the Court enters the following opinion and orders.

### Background

Lamebook seeks a declaratory judgment that its use of the term "Lamebook" does not infringe on Facebook's trademark. Lamebook is a website that highlights funny content posted by Facebook users. Lamebook does not offer social networking of any sort and argues it does not compete with Facebook. Instead, Lamebook argues, by compiling humorous content from Facebook, Lamebook is a parody of Facebook which comments on how people use Facebook and Facebook's role in society.

In March 2010, Facebook sent a cease & desist letter to Lamebook. The parties had a series of conversations, but eventually, on November 4, 2010, Lamebook filed this declaratory judgment

suit. On November 8, 2010 Facebook sued Lamebook in the Northern District of California asserting assorted trademark infringement claims. Facebook moves to dismiss or transfer this case to be consolidated in the Northern District of California.

## Analysis

### I. First to File

The Fifth Circuit adheres to the "first-to-file" rule, which holds that when two related cases are pending in two district courts, the later-filed action should be dismissed if the issues in the two cases "substantially overlap." *The Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). There is no dispute that this suit was filed before the suit in the Northern District of California. There is also no dispute that the issues in the two cases substantially overlap. Finally, there is no dispute that jurisdiction is proper in the Northern District of California. Thus, the only question is whether the Court should exercise its discretion to dismiss a declaratory judgment suit.

### II. Discretion to Dismiss Declaratory Judgment Action

There is not an absolute right to a declaratory judgment. District courts have discretion to entertain requests for declaratory relief, but 28 U.S.C. § 2201(a) does not impose a mandatory duty to hear and adjudicate declaratory judgment lawsuits. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995). The Fifth Circuit has set forth a three-step inquiry that district courts must undertake when determining whether to dismiss a declaratory judgment action: 1) whether the declaratory judgment is justiciable; 2) whether the court has the authority to grant declaratory relief; and 3) whether the court should exercise its discretion to dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

The first two factors are undisputed and clearly present in this case. There is a justiciable controversy between the parties as to whether Lamebook has the right to use the Lamebook mark; this Court has the authority to grant relief because the dispute involves a federal question under Section 43 of the Lanham Act; diversity exists between the parties; and there is no pending state court action. Thus, the decision to dismiss this action rests solely on the third factor—whether the Court should exercise its discretion to do so.

The Fifth Circuit identified seven factors to consider when a court decides whether to exercise its discretion to dismiss a declaratory judgment action. *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585, 590-91 (5th Cir. 1994). The *Trejo* factors are: 1) whether there is a pending state action in which all matters in controversy may be fully litigated; 2) whether plaintiff filed suit in anticipation of a lawsuit filed by defendant; 3) whether plaintiff engaged in forum shopping; 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; 5) whether the federal court is a convenient forum; 6) whether retaining the lawsuit would serve purposes of judicial economy; and 7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. The Fifth Circuit has repeatedly held that the *Trejo* factors must be considered on the record before a discretionary dismissal of a declaratory judgment occurs. *See e.g. Am. Bankers Life Assur. Co. of FL. v. Overton,* 128 Fed. Appx. 399, 402 (5th Cir. 2005).

A.     **Factors 1 & 7—Pending State Action, State Judicial Decree**

These factors are inapplicable in the pending suit. Both suits between Facebook and Lamebook are in federal court and there is no state judicial decree to be construed. Thus, these factors do not weigh for or against dismissal.

### B.   Factors 2, 3, & 4—Anticipatory Suit, Forum Shopping, and Inequities

The dispute between the parties mostly centers on these three factors. Lamebook essentially admits this suit was filed in anticipation of a trademark infringement suit by Facebook. *See* Compl. ¶¶11-13. The problem with this characterization, however, is that declaratory judgment suits are by nature often "anticipatory." *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391-92 ("Declaratory judgments are often anticipatory, filed when there is an actual controversy that has resulted in or created a likelihood of litigation."); *Id.* at 397 ("[A] proper purpose of Section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued."). Thus, in order to determine whether a declaratory judgment should be dismissed because it is anticipatory, the Fifth Circuit asks whether a declaratory judgement action was filed for "improper and abusive" reasons. *Id.* at 391.

There is a "general policy that a party whose rights are [apparently] being infringed should have the privilege of electing where to enforce its rights." *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 997 (E.D.Tex.1999). Assorted Texas cases have dismissed a declaratory judgment suit if it was brought only to subvert the real plaintiff's advantage by allowing a party to select its preferred forum. *See e.g., Capco Int'l, Inc. v. Haas Outdoors, Inc.*, No. Civ. A. 3:03-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004). However, simply filing a declaratory judgment action in a federal court with jurisdiction to hear it does not amount to improper or abusive forum shopping. *Sherwin-Williams*, 343 F.3d at 391.

Facebook asserts this Court should decline to adjudicate this claim, arguing that Lamebook feigned interest in settlement while it prepared and filed an anticipatory lawsuit in order to obtain its venue of choice in response to threats of litigation by Facebook. Facebook argues Lamebook

agreed to explore changing its name and thus resolving the dispute. Lamebook argues it did not act improperly or abusively in filing its declaratory judgment suit and the suit was not filed in order to avoid a less ideal venue chosen by Facebook. Lamebook indicates it refused to change its name and there was no race to the courthouse because Facebook never indicated litigation was imminent. The parties each frame the discussion differently, but the question comes down to whether Lamebook filed its declaratory judgment action in order to prevent Facebook from enforcing its rights in its forum of choice—an improper reason for filing a declaratory judgment suit warranting dismissal—or Lamebook filed its suit to clear up an eight-month dispute about Lamebook's rights—a proper reason for filing.

In March 2010, Facebook asked Lamebook to cease using the Lamebook mark and change the name and look of the Lamebook website. Def. Mot. at 3. Lamebook obtained legal counsel and the parties began discussions in April 2010. Facebook claims throughout these discussions it was prepared to take legal action if Lamebook did not change its name. *Id.* Lamebook claims it made clear that it was not interested in changing its name and believed it did not infringe or dilute Facebook's trademark rights. Pl. Resp. at 6. In July 2010, Facebook sent a letter to Lamebook detailing its objections to Lamebook's name and stated: "Facebook is prepared to enforce its rights to the full extent of the law, including but not limited to terminating Lamebook's presence on the Facebook site and opposing its trademark applications. . . . In the spirit of resolution and as a showing of good faith, Facebook has postponed taking action for the time being." Def. Mot. at Att. 1, Ex. C 4-5. Notably missing from this list of possible actions is litigation, although it is implied. Following receipt of the letter, Lamebook requested a meeting with Facebook in order to discuss the situation and Facebook refused to meet. Pl. Resp. at 6.

In September 2010, Lamebook indicated it would explore the possibility of changing its name. Pl. Resp. at 6. Lamebook never indicated it was willing to change its name, but that it agreed to test the name "Lameblog" in order to determine whether it was a viable alternative. *Id.* At the end of September, Facebook checked on the status of the new name. Def. Mot. Att. 1, Ex. D-Email from Kathleen Johnston ("I'm calling to check on the status of the new name. I presume testing should be done by now. Pleas let me know where we stand. We are going to need to start the transition right away."). Again, there is no indication of the consequences of failing to act "right away." Lamebook's counsel responded that he could provide "a status update and start discussing the possible terms of a transition." Def. Mot. at 4. It is unclear what happened throughout the month of October, although apparently the parties "exchanged telephone messages." *Id.* at Att. 1 ¶ 7.

Finally, on November 2, 2010, in response to a message from Facebook's counsel, Lamebook's counsel left a voicemail message advising suggesting the possibility of scheduling a call on the afternoon of Thursday, November 4. Pl. Resp. at 7. Lamebook's counsel said:

> [W]e should definitely be able to connect. . . . [I]f you want to just schedule something, I've got a pretty crazy day tomorrow but we can just schedule a call if you want on Thursday. Thursday afternoon looks pretty good for me. So just let me know and we can talk about what's going on. Talk to you soon. Bye.

Def. Exs. E (transcript of message), J (recording of message).

Facebook never returned this phone call. Pl. Resp. at 7. At this point Lamebook had been preparing to file a declaratory judgment suit for several weeks due to the ongoing dispute with Facebook which seemed to have no definite end in sight. Thus, after the close of business hours on Thursday, November 4, having still heard no reply from Facebook, Lamebook filed this suit at 6:35 pm. *Id.* Ex. B. Facebook the filed its suit in the Northern District of California on November 8.

Lamebook argues it did not feign interest in settlement because it made clear that it refused to change its name. Further, Lamebook alleges Facebook never indicated litigation was imminent. The parties simply have different claims regarding whether Facebook threatened legal action or not. Suffice to say, there is no indication Facebook specifically threatened legal action at a particular time or under particular circumstances.

The parties engaged in discussions for eight months, although it appears the number of communications during that time was relatively small. Lamebook correctly concedes that Facebook held out a general threat of "enforcing their rights," but never specifically threatened litigation. Further, the discussions seem to be less about negotiating and more focused on Facebook's demands. Facebook demanded Lamebook change its name, Lamebook refused, Facebook repeated its demands, and Lamebook continued to refuse. As Lamebook's counsel explained at the hearing, Lamebook seemed to have three options: (1) capitulate, (2) sit and wait to see if anything happened, or (3) sue. Lamebook then agreed to explore the possibility of changing its name to "Lameblog," but told Facebook it would have to do testing to see if the name switch would be acceptable. Finally, Lamebook filed suit to clear up the dispute.

Facebook claims it was negotiating in good faith when it spent eight months essentially saying it would take some sort of action if Lamebook refused to change its name. Rather than follow through on any of its threats, Facebook would respond to Lamebook's refusal by repeating its threats, but indicating it was really serious this time. Lamebook would refuse and Facebook would again fail to take action. In other words there were multiple refusals by Lamebook to change its name and even when it agreed to explore changing its name, it was adamant that it was not agreeing to a change. Despite all of this, Facebook never filed suit, or even clearly indicated it planned to file suit.

When a party knows that its adversary intends to bring a substantive suit, the party may not bring a declaratory action in another venue to subvert the "real plaintiff's" right to choose the forum for its claims. *Kinetic Concepts, Inc. v. Connetics Corp.*, No. Civ. A. SA-04-CA0237XR, 2004 WL 2026812, at *4 (W.D. Tex. Sept. 8, 2004) ("[Courts] generally will not allow a party to secure its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum." (citation omitted)); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (noting that anticipatory lawsuits are disfavored). Lengthy negotiations and the "tenor" of the parties' relations can serve as evidence that a lawsuit was anticipated. *Kinetic Concepts*, 2004 WL 2026812, at *4.

Here, the tenor of the parties' relations indicates Lamebook did not have notice Facebook intended to bring suit. At best, Lamebook was on notice of Facebook's plan to take "legal action" to contest Lamebook's pending trademark application and Facebook's plan to disable Lamebook's Facebook page. In short, this is a great example of a need for a declaratory judgment. Lamebook had made its points clearly and was waiting to see what Facebook would do. Facebook is not entitled to use vague threats of action in perpetuity. Following eight months of unsuccessful conversations and Facebook not filing suit, Lamebook still did not know when or if Facebook would file suit. Lamebook sought to resolve the dispute in this Court. Such was its right. Facebook argues this puts a disincentive on pre-suit settlement discussions. Were this an actual race to the courthouse, Facebook's concerns might be justified. Instead this was casual stroll to the courthouse following eight months of discussions and uncertainty.

As for inequities, even assuming Facebook threatened litigation for the better part of the eight months of discussions with Lamebook, it is not inequitable for Lamebook to seek to finally clear up

the issue, considering it had clearly indicated it was not willing to change its name. In addition, Facebook is a national company with an office in Austin, whereas Lamebook is an Austin-based company and all of its witnesses and documents are in Austin. *See* Pl. Resp. at 9. There is no inequity in keeping the suit in this district. Both parties are more than capable of pursuing the case here.

### C. Factor 5—Convenient Forum

As discussed above, the forum is almost equally convenient for the parties, although the forum slightly favors Lamebook. Lamebook is based in Austin and all of its witnesses and documents are located here. *Id.* Facebook has an Austin sales and operations office (located just blocks from the federal courthouse), but all of the documents and witnesses it expects to produce are in California. Def. Reply at 5.

### D. Factor 6—Judicial Economy

Judicial economy clearly supports only one of these two cases going forward. All claims for relief can be asserted in either suit. While Facebook has pursued "broader relief" in California, including claims for federal anti-cybersquatting, false designation of origin, state and common law claims, Facebook could file these as counterclaims in the instant suit. Both suits are, or have the potential to be, equal in scope. Both parties seem to agree one of the suits should be dismissed, they just disagree about which one. Thus, this factor does not favor dismissal of the declaratory judgment suit.

**Conclusion**

In short, there is no question Lamebook filed this suit in order to preempt litigation by Facebook. However, after eight months of unproductive communications with Facebook, it is clear Lamebook would have been remiss were it not prepared for a lawsuit. If anything, the equities favor Lamebook because Facebook is a national company. Lamebook delayed eight months before filing its declaratory judgment suit. This is not the type of preemption Courts frown upon. Lamebook was not required to wait indefinitely until Facebook filed, since it was unclear whether Facebook would ever file. Lamebook did not file in order to deny Facebook its choice of forum, but rather to clear up a question of law which had been hanging over its head for eight months. This is a textbook case of the purpose of a declaratory judgment suit—to clear up a cloud of unresolved dispute. Thus,

IT IS ORDERED that Defendant Facebook, Inc.'s Motion to Dismiss [#19] is DENIED.

SIGNED this the 14th day of June 2011.

*[signature]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE